IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 06-57-KAJ |
| WAYNE GAMBLE, | : | |
| Defendant. | : | |

## GOVERNMENT'S RESPONSE TO THE DEFENDANT'S PRE-TRIAL MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

**NOW COMES** the United States of America, by and through its undersigned attorneys, and hereby responds to Defendant's Pre-Trial Motion to Suppress Evidence and Statements, as follows:

### Factual Background

1. On February 5, 2006, at approximately 4:20 a.m., Wilmington police were called to the scene of a burglary in progress in the 1000 block of Lombard Street, Wilmington, Delaware.

2. Within a matter of minutes, Wilmington Police Officer Mark Martinez was en route to the reported burglary, when he saw a lone individual, later identified as Wayne Gamble, running away from the scene of the burglary, westbound in the middle of 10th Street, at a location which was only one to two blocks from the burglary address. Officer Martinez radioed a brief description of this individual, and proceeded to the scene of the burglary. There, he found that a liquor store had been burglarized, sounding an audible burglary alarm. One block away

from the burglary address, Officer Martinez stopped and detained an individual who was carrying proceeds from the burglary.

3.	Meanwhile, Wilmington Police Officer Michael Duckett saw Gamble walking east on 10th Street, now moving back towards Lombard Street. Officer Duckett noticed that Gamble repeatedly looked over his shoulder at the marked police vehicle. Officer Duckett stopped Gamble to ask him a few questions, and radioed Officer Martinez to inform him that he had made the stop. Officer Martinez returned to 10th Street a few minutes later and confirmed that Gamble was the same individual he had seen running away from the burglary scene a few moments earlier.

4.	Gamble was placed in handcuffs and Officer Duckett conducted a brief pat-down of the exterior of Gamble's clothing to check for weapons. During the pat-down, Officer Duckett found a loaded, Colt .357 Python revolver inside Gamble's right pant leg. Gamble was then placed under arrest and taken to the Wilmington Police Station.

5.	Officer Duckett twice administered the *Miranda* warnings to Gamble at the scene of the initial arrest and back at the police station. Gamble verbally indicated that he understood the warnings. Following the *Miranda* warnings, Gamble gave a voluntary statement in which he admitted to possession of the firearm, described how he purchased the firearm, and offered reasons for possessing it.

**Legal Argument**

6.	The defendant seeks suppression of the evidence and statements obtained as a result of the pat-down of Gamble, because he claims that the officers lacked reasonable suspicion to believe that Gamble was about to commit a crime or that he just committed one. He also

challenges the admissibility of his statements following his arrest pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

7. The investigatory stop of Gamble was appropriate under *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (noting that an officer, without a warrant, "may consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot"); *Terry*, 392 U.S. at 22-24. Here, the officers were in possession of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the brief investigatory detention and protective pat-down. *Terry*, 392 U.S. at 21.

8. The officers' reasonable suspicion was supported by the following facts: (1) only few minutes after report of the break-in, Officer Martinez saw Gamble running in the middle of road, a few streets from the burglary location; (2) after Officer Martinez turned off of 10th Street, Gamble double backed and began walking eastbound on 10th Street; (3) the officers did not observe anyone else in Gamble's immediate vicinity; (4) the officers were patroling what they knew to be a relatively high-crime area; (5) Gamble was observed at approximately 4:20 a.m.; and (6) Officer Duckett observed that Gamble appeared nervous and kept looking over his shoulder at his police cruiser.[1]

---

[1] It does not matter that some of these observations were made by Officer Martinez, and had yet to be communicated to Officer Duckett, prior to the initial stop of Gamble, or vice versa. Under the collective knowledge doctrine this Court should consider the "collective knowledge of the investigating officers" in conducting the reasonable suspicion analysis. *United States v. Belle*, 593 F.2d 487, 497 n.15 (3d Cir. 1979); *see also Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998) ("[I]t is a well-established principle of our jurisprudence that: '[T]he police who actually make the arrest need not personally know all the facts that constitute probable cause . . . the arrest is proper so long as . . . the collective knowledge of the agency he works for, is sufficient to constitute probable cause.'" (quoting *United States v. Valencia*, 913 F.2d 378, 383 (7th Cir. 1990)).

9. These facts are even more compelling than cases in which the Third Circuit has found reasonable suspicion. For example, in *United States v. Goodrich*, 450 F.3d 552 (3d Cir. 2006), law enforcement officers, responding to a reported theft-in-progress, stopped a car between one and two blocks from the crime scene, within seven minutes of the theft report. The stop occurred in an area that was relatively high in crime, and occurred at 11:30 p.m. The officers reported that there were no other vehicles in the area. In upholding the constitutionality of the stop, the Third Circuit relied heavily on the "temporal and geographical proximity of the car to the scene of the crime" in addition to considering the late hour of the day, the crime level of the area, and the lack of other cars in the immediate vicinity. *Id.* at 561-63; *see also United States v. Juvenile TK*, 13 F.3d 899 (8th Cir. 1998) (upholding a car stop where the only information the police received was that a man in a gray vehicle had brandished a gun, and five minutes later, the police saw the defendant make a U-turn in a gray vehicle one to two blocks from the crime scene); *United States v. Moore*, 817 F.2d 1105 (4th Cir. 1987) (supporting reasonable suspicion with the fact that the officer "saw [the defendant] close to one of the entrances of the building" where there had been a reported burglary, and citing the factors that "[o]nly two to three minutes had elapsed since [the officer] first received the dispatcher's call," "[t]he call came late at night, and the [defendant] was the only person in the vicinity.").[2]

10. The officers in this case could rely on each of the factors cited in *Goodrich*, but could also consider the fact that Gamble was observed running away from the crime scene and then doubling back. Moreover, Gamble was stopped on a February evening after 4:00 a.m. — a

---

[2]The Third Circuit relied extensively on both *Juvenile TK* and *Moore* in *Goodrich*, 450 F.3d at 562-63.

particularly unusual hour for an individual to be running in the street on a winter evening. Finally, the officers could consider Gamble's suspicious demeanor and the fact that repeatedly looked over his shoulder at Officer Duckett's police cruiser. *See United States v. Robertson*, 305 F.3d 164 (3d Cir. 2002) (holding that police "had a reasonable suspicion that the suspects he viewed sprinting through the streets of Philadelphia, in close proximity to the scene of an armed robbery, had committed the crime"); *United States v. Brown*, 159 F.3d 147, 150 (3d Cir. 1998) (finding reasonable suspicion where police saw suspects in a high crime area, at 1:30 a.m. on a winter night, only a few minutes after a report of "shots fired," the suspects were in close proximity to the crime scene, and the defendant fled when the police began to approach).[3]

11.     Given the circumstances of the stop, the officers also had a reasonable basis to conduct a brief pat-down of Gamble to check for weapons and ensure officer safety. *See Moore* 817 F.2d at 1108 ("The circumstances surrounding the stop support the officer's belief that a further frisk for weapons was warranted. The hour was late, the street was dark, the officer was alone, and the suspected crime was a burglary, a felony that often involves the use of weapons.").

12.     Finally, the defendant's argument that Gamble's station-house statement should be suppressed is unwarranted in light of the fact that Officer Duckett will testify that he did advise Gamble of his *Miranda* rights and that Gamble voluntarily waived those rights by making a statement regarding his possession of the firearm.

**WHEREFORE,** the United States requests that the Court deny, following the evidentiary hearing, the defendant's Motion to Suppress.

---

[3] *See also United States v. Jordan*, 232 F.3d 447 (5th Cir. 2000) (upholding pat-down considering the fact that the defendant was "running, the proximity of the store, his furtive glances over his shoulder, the time (6:45 p.m. on a January evening), and place (a high crime area)").

Respectfully submitted,

COLM F. CONNOLLY
UNITED STATES ATTORNEY

BY: /s/
Ilana H. Eisenstein
Assistant United States Attorney

Dated: November 21, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 06-57-KAJ |
| WAYNE GAMBLE, | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, Ilana H. Eisenstein, Assistant United States Attorney for the District of Delaware, hereby certify that on the 21st day of November, 2006, I caused to be electronically filed a **Response to Defendant's Pre-trial Motion to Suppress Evidence and Statements** with the Clerk of the Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF. I further certify that a copy of the foregoing was mailed via first class mail to counsel of record as follows:

/s/Ilana H. Eisenstein
Ilana H. Eisenstein
Assistant United States Attorney